## Youman v. Commonwealth.

### (Decided January 27, 1922.)

### Appeal from Hardin Circuit Court.

1. Intoxicating Liquors—Constitutional Law—18th Amendment.—Section 2572c, subsection 8 of Kentucky Statutes, an act of the legislature of March 29, 1918, is not incompatible with the eighteenth amendment of the Constitution of the United States and the provisions of the Volstead Act, known as the national prohibition law, enacted pursuant thereto.

2. Intoxicating Liquors—Enforcement—Concurrent Power.—The term "concurrent power," as used in section 2 of the eighteenth amendment, is not to be construed as equal or joint authority or as limiting the power of the respective states to the enforcement of congressional legislation or to the enactment and enforcement of state legislation identical in its terms with congressional legislation.

3. Intoxicating Liquors—Enforcement—Concurrent Power.—The intent and purpose of the eighteenth amendment was to make prohibition effective, and to achieve that purpose there were conferred upon Congress powers theretofore not possessed with concurrent power in the several states to enforce the amendment and effectuate its purpose by appropriate legislation. The power in the states is not incapable of manifestation by state legislation, dissimilar to national legislation, provided it does not collide with the exercise of the power conferred on the Federal government.

4. Intoxicating Liquors—Appropriate Legislation.—The words "appropriate legislation" in the eighteenth amendment evidently contemplated legislation independent of Federal legislation, or something different from Federal legislation, so long as it was not inharmonious with the exercise of the Federal power conferred.

5. Intoxicating Liquors—Enforcement.—State legislation directed to the enforcement of prohibition, within the jurisdiction of the state, by means different from those adopted by Congress, if such means do not conflict with the efficacious enforcement of congressional legislation, is within the purview and meaning of the eighteenth amendment, and it is indifferent whether the state laws were passed before or after the amendment and the Volstead act went into effect.

6. Intoxicating Liquors—Conflict of Laws.—A state statute denouncing an act unlawful under the Volstead act and fixing a penalty for its commission in excess of the penalty imposed by that act, does not amount to a prohibitory conflict but is the legitimate exercise of the power of the state in the accomplishment of the purposes of the amendment.

H. L. JAMES for appellant.

CHAS. I. DAWSON, Attorney General, and THOS. B. McGREGOR, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE MOORMAN—Affirming.

Roy Youman was indicted and tried in the Hardin circuit court for an offense denounced by section 2572c, subsection 8 of Kentucky Statutes, an act of the legislature of March 29, 1918. He was convicted and his punishment fixed at a fine of $500.00 and imprisonment in the county jail for six months. A reversal of that judgment is sought on the ground that the statute, under which the conviction was procured, is incompatible with the eighteenth amendment of the Constitution of the United

States and the provisions of the Volstead Act, known as the national prohibition law, enacted pursuant thereto.

The offense committed by appellant was that of unlawfully having in his possession, within the Commonwealth of Kentucky, an illicit or moonshine still. For this offense first committed, there is a fine of not less than $50.00 nor more than $500.00 and a penalty of confinement in the county jail not exceeding six months.

It is assumed in argument that a like act is denounced by the Volstead Act, with a penalty for the first commission of a fine of not more than $500.00.

Passing this assumption for the present—indulged as illustrating a phase rather than constituting the foundation for the main contention—we come to a consideration of the argument in its broader aspect, which is that the words "concurrent power" as used in section 2 of the constitutional amendment are to be construed as meaning "joint and equal" authority or "the same authoriey," and consequently, conflict between the applied power of the states and Federal government, respectively exercised for the enforcement of prohibition, must result in the nullification of the inferior power resting in the states. The measure of conflict, deemed fatal to state legislation, is not clearly exposed, but there is an evident inference that it comprehends any state legislation, varying from the national law in offenses denounced and penalties imposed. As decisive of the question involved both parties rely on Rhode Island v. Palmer, 253 U. S. 350, in which the eighteenth amendment and certain general features of the national prohibition law were under consideration.

The amendment provides:

"Section 1. After one year from the ratification of this article the manufacture, sale, the transportation of intoxicating liquor within, the importation thereof into, or the exportation thereof from the United States and all territories subject to the jurisdiction thereof for beverage purposes is hereby prohibited.

"Section 2. The Congress and the several states shall have concurrent power to enforce this article by appropriate legislation."

The conclusions in the Rhode Island case, *supra,* were announced by Mr. Justice VanDevanter, 8 and 9 of which, as assailed in the dissenting opinion of Mr. Justice Clark, constitute the basis for the contentions presented by appellant on this appeal.

The controversy really develops round the term "concurrent power," as used in section 2 of the amendment, it being earnestly argued, that the term so used is to be construed as conferring joint or equal power on the respective states and the national government.

The two conclusions read:

"The words 'concurrent power' in that section do not mean joint power, or require that legislation thereunder by Congress, to be effective, shall be approved or sanctioned by the several states or any of them; nor do they mean that the power to enforce is divided between Congress and the several states along the lines which separate or distinguish foreign and interstate commerce from intrastate affairs.

"The power confided by Congress by that section, while not exclusive, is territorially co-extensive with the prohibition of the first section, embraces manufacture and other intrastate transactions as well as importation, exportation, and interstate traffic, and is in no wise dependent on or affected by action or inaction on the part of the several states or any of them."

While it is to be regretted that there is no amplified discussion of the term in the conclusions quoted it would seem, as indeed it is stated, that it is not to be construed as meaning joint. This view is fortified by the more extended discussion in the concurring opinion of the Chief Justice where it is said:

"In the third place, when the second section is considered with these truths in mind it becomes clear that it simply manifests a like purpose to adjust, as far as possible, the exercise of the new powers cast upon Congress by the amendment to the dual system of government existing under the Constitution. In other words, dealing with the new prohibition created by the Constitution, operating throughout the length and breadth of the United States, without reference to state lines or the distinctions between state and Federal power, and contemplating the exercise by Congress of the duty cast upon it to make the prohibition efficacious, it was sought by the

second section to unite national and state administrative agencies in giving effect to the amendment and the legislation of Congress enacted to make it completely operative.''

If the dissenting opinion of Mr. Justice Clark is susceptible of the construction that the amendment confers ''joint'' authority on the Federal government and the respective states to enforce prohibition, and the power of the states, in consequence thereof, is limited to the enforcement of congressional legislation or to the enactment and enforcement of state legislation, identical in its terms with congressional legislation, it can hardly be said to be authoritative, in view of the pronouncements of the Chief Justice, concurring in the conclusions, and the language of conclusion 9 that the power confided in Congress is not exclusive, and that of conclusion 7 that it does not enable Congress and the several states to thwart prohibition but to enforce it by appropriate legislation.

Until there are authoritative adjudications of the manifold questions, that must necessarily arise by reason of the numerous legislative enactments of the states, making or attempting to make effective the declared purposes of the amendment, the power of the states in relation to, and perhaps as distinguished from, the greater power with which Congress is clothed cannot be defined with accuracy. There are, however, judicial interpretations of this power exercised for the enforcement of the amendment, which are strongly persuasive if not controlling. Among them are Re Guerre, 110 Atlantic 224; 10 A. L. R. 1560; Com'th v. Nickerson, 128 N. E. 273; 10 A. L. R. 1568; Jones v. Hicks, 104 S. E. 771; 11 A. L. R. 1315.

The opinion in the Nickerson case, *supra*, contains an interesting discussion of the words ''concurrent power,'' and, while admitting inability to deduce a universal definition from the interpretative decisions on the subject, its conclusion, in accord with the first principles of constructional law, is that they must be determined in the light of their context and the purposes sought to be accomplished in the amendment.

Proceeding on the undeniable premise, that power to enact and to enforce prohibitory laws, with reference to intoxicating liquor, belonged to the states respectively, before the adoption of the eighteenth amendment, and

that it continues with them unless it has been wholly surrendered to the Federal government, it is perceivable at once that the police power of the states in this respect is unimpaired, except to the extent that it has been curtailed by the amendment and Federal legislation enacted pursuant thereto. Section 2 of the amendment is not susceptible, in our opinion, of the construction of a conference of all power in the national government, depriving the states of the power, theretofore possessed by them; or effectuating the equivalent of leaving to them the option of enforcing laws adopted by Congress or enacting and enforcing laws similar in all respects thereto. The intent and purpose of the amendment was to make prohibition effective and, to achieve that purpose, there was conferred upon Congress powers, theretofore not possessed, with concurrent power in the several states to enforce the amendment and effectuate its purposes by appropriate legislation. The term appropriate legislation evidently contemplated legislation independent of Federal legislation, or something different from Federal legislation, so long as it was not inharmonious with the exercise of the Federal power conferred. With the general purpose of the amendment in view, it would seem that the concurrent power to enforce prohibition by "appropriate legislation" is not incapable of manifestation by state legislation, dissimilar to national legislation, provided it does not collide with the exercise of the power conferred on the Federal Congress.

In the Nickerson case, *supra,* it was said:

"The force and effect of the words of the eighteenth amendment while possibly enlarging the permissible scope of state legislation respecting importation and exportation of intoxicating liquor leave open to state legislation the same field theretofore existing for the exercise of the police power concerning intoxicating liquor, subject only to the limitations arising from the conferring of like power upon Congress with its accompanying implications whatever they may be."

And again it was said:

"Legislation by the states need not be identical with that of Congress. It cannot authorize that which is forbidden by Congress but the states need not denounce every act committed within their boundaries which is

included in the inhibition of the Volstead Act nor provide the same penalty therefor. It is conceivable also that a state may forbid under penalty acts not prohibited by the act of Congress. The concurrent powers of the states may differ in means adopted provided they are directed to the enforcement of the amendment.''

It cannot be thought that state legislation, on this subject, hostile to the amendment or to Congressional legislation would be sustainable. Illustrative of conflict, are state laws licensing saloons and authorizing the sale of liquor, rendered nugatory when the amendment became effective. And similarly, a state statute, defining intoxicating liquor as excluding something included in the definition of Congress, would be invalid. The power of the states, as exercised in those instances, would not be an aid to the enforcement of prohibition but would be an impediment, and obviously violate the avowed purpose of the amendment. But state legislation, directed to the enforcement of prohibition within the jurisdiction of the state, by means different from those adopted by Congress, if such means do not conflict with the efficacious enforcement of congressioaal legislation, would seem to be within the purview and meaning of the amendment. And, in our opinion, it is indifferent whether the state laws were passed before or after the amendment and the Volstead Act went into effect.

We are not unmindful of those subjects forbidden to the states, by virtue of the power of exclusive control vested in the Federal government. This subject, as we have seen, is not susceptible of such classification. With equal certainty it may be said that it is unaffected by the established doctrine that the reserve power of the Federal government, when once exercised by legislation evidencing a purpose to occupy the field, is a barrier to all state legislation on the same subject.

The power possessed by Congress over this subject did not exist, in times of peace, before the adoption of the amendment, which by its terms preserved in the states the power, they theretofore had, of enforcing prohibition by appropriate legislation, subject now undoubtedly to the rule that if brought in conflict with the greater power vested in Congress the latter must prevail.

What constitutes conflict, in the sense of rendering the laws of the states invalid, is an inquiry that must be answered by a final adjudication of many questions that will inevitably arise in the attempt to enforce the prohibitory laws of the various states. Examples of manifest conflict have been cited, and we would not attempt to define the limits of the legitimate activities of the respective states in relation to the operation of the Volstead Act, but, as applicable to the case at bar, we are constrained to hold that a state statute denouncing an act, unlawful under the Volstead Act, and fixing a penalty for its commission in excess of the penalty imposed by that Act, does not amount to a prohibited conflict, but is the legitimate exercise of the power of the state in promoting the purposes of the amendment.

Reverting to the assertion that the offense for which appellant was convicted was an act denounced by the national prohibition law and penalized less severely therein than by the state statute, we pause merely to question the exactitude of the assumption without perceiving its materiality. The Volstead Act prohibits the possession of property designed for the manufacture of liquor, intended for unlawful use, whereas appellant was convicted for having in his possession an illicit or moonshine still. The former is more comprehensive in its scope than the latter, yet it is conceivable that an act offending either would not be offensive as to the other. But indulging the assumption, the penalty imposed by the state statute is greater than that imposed by the Federal law, in consequence of which there can be no inimical conflict, as the enforcement of the former would not be an obstacle but an aid to the efficacious enforcement of the amendment.

Appellant's position, in our opinion, is not strengthened by the contention that the act for which he was punished in this case constitutes an offense against the Volstead Act and, therefore, subjects him to another punishment under that law. The question is not here, except theoretically, and its consideration is not necessary to a proper determination of this case.

On the grounds and for the reasons indicated, we hold that the conviction is valid and the judgment is, therefore, affirmed.