State v. Rhodes.

## THE STATE v. HOMER RHODES.

### (*Jackson.* April Term, 1922.)

1. **INTOXICATING LIQUORS.** States surrendered no power under Eighteenth Constitutional Amendment other than the power to authorize or sanction what it prohibits.

The States did not surrender, by the Eighteenth Constitutional Amendment, their power or right to deal with the subject of intoxicating liquors by appropriate legislation not authorizing or sanctioning what the amendment prohibits, and State laws tending toward the enforcement of the amendment still rest on the authority of the State. (*Post, p.* 402.)

Acts cited and construed: Acts 1917, ch. 12.

Case cited and approved: Mugler v. Kansas, 123 U. S., 623.

Cases cited and distinguished: Greenwood v. State, 65 Tenn., 567; Rhode Island v. Palmer, 253 U. S., 350.

Constitution cited and construed: Art. 1, sec. 10.

2. **CRIMINAL LAW.** Plea of former jeopardy in federal court not available in State court.

The State and federal laws as to intoxicating liquors emanate from different sovereignties denouncing different offenses, and the same act may be an offense against the two governments punishable by both; hence a plea of former jeopardy in a tribunal of one government is not available in a tribunal of the other. (*Post, pp.* 402-412.)

Cases cited and approved: State v. Smith, 199 Pac., 194; Barron v. The Mayor & City Council of Baltimore, 7 Peters, 243; Fox v. State of Ohio, 5 How., 410; U. S. v. Marigold, 9 How., 560; Moore v. People of State of Ill., 14 How., 13; Cross v. North Carolina, 132 U. S. v. Regan, 273 Fed., 727; Bryson v. State, 108 S. E., 63; Moore 639; Martin v. U. S., 271 Fed., 685; U. S. v. Bostow, 273 Fed., 535;

State v. Rhodes.

U. S. v. Regan, 273 Fed., 727; Bryson v. State, 108 S. E. 63; Moore v. State, 108 S. E. 65; Greenwood v. State, 65 Tenn., 567; State v. Mason, 71 Tenn., 649; State v. Taxing Dist., Shelby Co., 84 Tenn., 240; O'Haver v. Montgomery, 120 Tenn., 448; U. S. v. Amy, 14 Md., 149; Youmon v. Commonwealth, 193 Ky., 536.

Cases cited and distinguished: State v. Rankin, 44 Tenn., 145; Pearson v. State, 1 Shan. Cas., 311; Ex parte Siebold, 100 U. S., 371.

---

FROM SHELBY.

---

Appeal from the Criminal Court of Shelby County.— HON. T. W. HARSH, Judge.

WM. H. SWIGGART, JR., Assistant Attorney General, for the State.

CHAS. M. BRYAN and ARTHUR G. BRODE, for defendant.

MR. JUSTICE GREEN delivered the opinion of the Court.

The defendant, Homer Rhodes, was indicted in the criminal court of Shelby county under chapter 12 of the Acts of 1917, charged with unlawful possession and transportation of intoxicating liquors. He filed a plea of autre fois convict setting out that he had been indicted and convicted concerning the same acts in the United States court for the Western District of Tennessee under the federal law known as the Volstead Act (41 Stat. 305). The trial court sustained this plea and ordered the discharge of the defendant. From this order the State has appealed in error to this court.

The defendant relies on article 1, section 10, Constitution of Tennessee: "That no person shall, for the same offense, be twice put in jeopardy of life or limb."

The Fifth Amendment to the federal constitution contains an identical provision, and the federal cases to which we shall later refer are accordingly directly in point.

The State insists that the question of former jeopardy has not been raised by proper pleadings herein, but, since the question is important and requires determination, we pass over this criticism of defendant's pleadings.

In *Greenwood* v. *State,* 65 Tenn. (6 Bax.), 567, 32 Am. Rep., 539, the question is reserved as to whether the constitutional provisions above quoted from the constitution. of Tennessee and the constitution of the United States apply to offenses the punishment of which does not extend to life or limb, or to crimes as distinguished from misdemeanors. The court said it was well settled by the common law that no one could be twice put in jeopardy for the same offense, and that, if the protection sought was not found in the constitution, it was found in the common law.

The Eighteenth Amendment to the federal constitution was proclaimed as ratified in January, 1919. It is as follows:

"Section 1. After one year from the ratification of this article the manufacture, sale, or transportation of intoxicating liquors within, the importation thereof into, or the exportation thereof from the United States and all territory subject to the jurisdiction thereof for beverage purposes is hereby prohibited.

"Sec. 2. The Congress and the several States shall have concurrent power to enforce this article by appropriate legislation."

State v. Rhodes.

We do not venture any elaborate discussion of the effect of the amendment as it touches the rights of the States, or otherwise. The supreme court of the United States has so far declined to undertake this. However, the sixth, seventh, eighth, and ninth conclusion of that court in *Rhode Island* v. *Palmer*, 253 U. S., 350, 40 Sup. Ct., 486, 588, 64 L. Ed., 946, were in these words:

"6. The first section of the amendment—the one embodying the prohibition—is operative throughout the entire territorial limits of the United States, binds all legislative bodies, courts, public officers, and individuals within those limits, and of its own force invalidates every legislative act, whether by Congress, by a State legislature, or by a territorial assembly, which authorizes or sanctions what the section prohibits.

"7. The second section of the amendment—the one declaring 'the Congress and the several States shall have concurrent power to enforce this article by appropriate legislation'—does not enable Congress or the several States to defeat or thwart the prohibition, but only to enforce it by appropriate means.

"8. The words 'concurrent power' in that section do not mean joint power, or require that legislation thereunder by Congress, to be effective, shall be approved or sanctioned by the several States or any of them; nor do they mean that the power to enforce is divided between Congress and the several States along the lines which separate or distinguish foreign and interstate commerce from intrastate affairs.

"9. The power confided to Congress by that section, while not exclusive, is territorially coextensive with the prohibition of the first section, embraces manufacture and

146 Tenn.—26

other intrastate transactions as well as importation, exportation, and interstate traffic, and is in no wise dependent on or affected by action or inaction on the part of the several States or any of them."

A consideration of this language leads to the belief that the States, by this amendment, did not surrender their power to deal with intoxicating liquors, otherwise than to give up the power to authorize or sanction what the amendment prohibits. From this grant to the federal government the States excepted to themselves the right to deal with the subject by appropriate legislation not authorizing or sanctioning what the amendment prohibits.

We do not accept the idea that the power of the States over intoxicating liquors now flows from the Eighteenth Amendment to the federal constitution, as has been suggested. Since *Mugler* v. *Kansas,* 123 U. S., 623, 8 Sup. Ct., 273, 31 L. Ed., 205, it has not been doubted that full regulation of the manufacture and use of intoxicating liquors within its borders was the prerogative of the states under their reserved police powers. It seems to us that this power has been parted with only to the extent indicated, and state laws tending toward the enforcement of the Eighteenth Amendment still rest on the authority of the State, just as they did before the amendment.

This being so, the State laws and the federal laws as to intoxicating liquors emanate from different sovereignties. They denounce different offenses—the one, offenses against the State; the other, against the United States. That the same act may be an offense against the laws of two governments, may be punished by both, and that a plea of former jeopardy in a tribunal of one government is not available in a tribunal of the other, are propositions fully demon-

strated by the decisions of this court and of the supreme court of the United States.

Inasmuch as the supreme court of Oregon in *State* v. *Smith*, 199 Pac., 194, 16 A. L. R., 1220, has taken a different view, and as this view seems to be shared by some of the federal district judges, we think it desirable to support our conclusions herein by some consideration of the authorities.

We think it well established that the same act or series of acts may constitute an offense equally against the United States and the State and subject the guilty party to punishment under the laws of each government. We see no sound reason for making a distinction between offenses against the valid liquor laws of the two governments and offenses against other laws which both governments have enacted.

In *State* v. *Rankin*, 44 Tenn. (4 Cold.), 145, the defendant, a soldier in the United States army, was tried for murder before a court-martial organized under the military laws of the United States and found not guilty. Later he was indicted for the same act in one of the courts of this State and filed a special plea in bar setting out and relying on his trial and acquittal before the military court. The trial court sustained this plea, but this action was reversed by this court. The court said:

"The United States have provided for the punishment of murder, and other offenses, when committed by persons in the military service of the United States and subject to the articles of war, during the existence of a civil war, insurrection, or rebellion; and this, we think, was in the exercise of a power conferred by the Constitution of the United States.

"The government of the United States, and that of the State of Tennessee, are both, within its sphere, separate and distinct sovereignties; each may and has provided for the punishment of offenses against its own laws; but neither can, by merely providing for the punishment of offenders against its laws, deprive the other of the right or the power to punish offenses against its laws; and the mere fact that the same act may be an offense against the laws of both can make no difference. The act of Congress was not designed, neither could it operate, to provide a punishment for an offense against the laws of the state. One sovereign may not administer the criminal laws of another, or oust another of its jurisdiction to try and punish an offender against its laws, by punishing the same act. Murder is an offense against the laws of Tennessee, whether the perpetrator be a citizen or soldier; whilst it is only an offense against the laws of the United States, when committed in time of civil war, insurrection, or rebellion, and when the perpetrator is in the military service of the United States, and subject to the articles of war."

*State* v. *Rankin,* supra.

The same conclusion was reached by this court in *Pearson* v. *State,* 1 Shan. Cas., 311, which followed *State* v. *Rankin.* In an earlier case the supreme court of the United States considered the power of a State to punish the offense of circulating counterfeit coin of the United States in view of the power conferred upon Congress by the fifth and sixth clauses of the eighth section of the first article of the constitution of the United States—"to coin money, regulate the value thereof, and of foreign coin, and fix the standard of weights and measures;" "to provide for the punishment

State v. Rhodes.

of counterfeiting the securities and current coin of the United States."

It was argued that, in view of the power of Congress and the acts of Congress, it would subject an offender to double jeopardy to allow him to be punished under the law of the State mentioned. The court said:

"It has been objected on behalf of the plaintiff in error that, if the States could inflict penalties for the offense of passing base coin, and the federal government should denounce a penalty against the same act, an individual under these separate jurisdictions might be liable to be twice punished for the one and same crime, and that this would be in violation of the fifth article of the amendments to the constitution, declaring that no person shall be subject for the same offense to be twice put in jeopardy of life or limb. Conceding for the present that Congress should undertake, and could rightfully undertake, to punish a cheat perpetrated between citizens of a State because an instrument in effecting that cheat was a counterfeited coin of the United States, the force of the objection sought to be deduced from the position assumed is not perceived; for the position is itself without real foundation. The prohibition alluded to as contained in the amendments to the Constitution, as well as others with which it is associated in those articles, were not designed as limits upon the State governments in reference to their own citizens. They are exclusively restrictions upon federal power, intended to prevent interference with the rights of the States, and of their citizens. Such has been the interpretation given to those amendments by this court in the case of *Barron v. The Mayor and City Council of Baltimore,* 7 Peters, 243;

and such, indeed, is the only rational and intelligible interpretation which those amendments can bear, since it is neither probable nor credible that the States should have anxiously insisted to ingraft upon the federal constitution restrictions upon their own authority—restrictions which some of the States regarded as the *sine qua non* of its adoption by them. It is almost certain, that, in the benignant spirit in which the institutions both of the State and federal systems are administered, an offender who should have suffered the penalties denounced by the one would not be subjected a second time to punishment by the other for acts essentially the same, unless, indeed, this might occur in instances of peculiar enormity, or where the public safety demanded extraordinary rigor. But, were a contrary course of policy and action either probable or usual, this would by no means justify the conclusion, that offenses falling within the competency of different authorities to restrain or punish them would not properly be subjected to the consequences which those authorities might ordain and affix to their perpetration. *Fox* v. *State of Ohio,* 5 How., 410, 12 L. Ed., 213.

The foregoing was approved and somewhat amplified in the *United States* v. *Marigold,* 9 How., 560, 13 L. Ed., 257.

In the next case on the subject the supreme court was dealing with an Illinois law respecting fugitive slaves, Congress having passed a law on the same subject, and said:

"But, admitting that the plaintiff in error may be liable to an action under the act of Congress, for the same acts of harboring and preventing the owner from retaking his slave, it does not follow that he would be twice punished

State v. Rhodes.

for the same offense. An offense, in its legal signification, means the transgression of a law. A man may be compelled to make reparation in damages to the injured party, and be liable also to punishment for a breach of the public peace, in consequence of the same act, and may be said, in common parlance, to be twice punished for the same offense. Every citizen of the United States is also a citizen of a State or territory. He may be said to owe allegiance to two sovereigns, and may be liable to punishment for an infraction of the laws of either. The same act may be an offense or transgression of the laws of both. Thus an assault upon the marshal of the United States, and hindering him in the execution of legal process, is a high offense against the United States, for which the perpetrator is liable to punishment; and the same act may be also a gross breach of the peace of the State, a riot, assault, or a murder, and subject the same person to a punishment, under the state laws, for a misdemeanor or felony. That either or both may (if they see fit) punish such an offender cannot be doubted. Yet it cannot be truly averred that the offender has been twice punished for the same offense, but only that by one act he has committed two offenses, for each of which he is justly punishable. He could not plead the punishment by one in bar to a conviction by the other; consequently this court has decided, in the case of *Fox* v. *State of Ohio,* 5 How., 432, that a State may punish the offense of uttering or passing false coin, as a cheat or fraud practiced on its citizens; and in the case of the *United States* v. *Marigold,* 9 How., 560, that Congress, in the proper exercise of its authority, may punish the same act as an offense against the United States." *Moore* v. *People of State of Illinois,* 14 How., 13, 14 L. Ed., 306.

*Ex parte Siebold,* 100 U. S., 371, 25 L. Ed., 717, is very much in point. The constitution of the United States provides: "That the times, places and manner of holding elections for senators and representatives, shall be prescribed in each state by the legislature thereof; but the Congress may at any time by law make or alter such regulations, except as to the places of choosing Senators." Article 1, section 4.

Congress had passed a law with respect to the election of representatives in Congress making it a penal offense against the United States for any officer of election to violate any duty in regard to such election, whether required by a law of the State or of the United States. The petitioner was convicted of a violation of this act of Congress in a circuit court of the United States and sought his release on *habeas corpus.* Among other things, it was urged in his behalf that, if the federal government could punish him for a violation of State laws, he would be subject to double punishment, since the State might proceed against him as well. The court said:

"But the answer to this is that each government punishes for violation of duty to itself only. Where a person owes a duty to two sovereigns, he is amenable to both for its performance; and either may call him to account. Whether punishment inflicted by one can be pleaded in bar to a charge by the other for the same identical act need not now be decided, although considerable discussion bearing upon the subject has taken place in this court, tending to the conclusion that such a plea cannot be sustained." *Ex parte Siebold,* supra.

After reviewing the authorities from which we have quoted above the court continued:

State v. Rhodes.

"If the officers of election, in elections for representatives, owe a duty to the United States, and are amenable to that government as well as to the State, as we think they. are, then, according to the cases just cited, there is no reason why each should not establish sanctions for the performance of the duty owed to itself, though referring to the same act."

The analogy between *Ex parte Siebold* and the case before us seems very close. In both cases .the authority of the United States and of the States to deal with a particular subject are recognized in the constitution of the United States. The jurisdiction of the federal government is supervisory; yet it is declared in *Ex parte Siebold* that offenders are amenable to the laws of both governments.

In *Cross* v. *State of North Carolina,* 132 U. S., 139, 10 Sup. Ct., 47, 49 (33 L. Ed., 287), the court refers to "the established doctrine that the same act or series of acts may constitute an offense equally against the United States and the State, subjecting the guilty party to punishment under the laws of each government."

·In *Grafton* v. *United States,* 206 U. S., 333, 27 Sup. Ct., 749, 51 L. Ed., 1084, 11 Ann. Cas., 640, a soldier in the Philippine Islands was acquitted of a homicide by a general court-martial. It was held that he could not be tried respecting the same act in a civil court of those Islands. This was for the reason that the Philippine government owed its existence to the United States, and its tribunals exerted all their powers under authority of the United States. The offense committed was therefore an offense against the United States government only, not an offense against two governments—the State and the United States government.

State v. Rhodes.

The court carefully distinguished the cases holding that the same act committed in a State of the Union might constitute an offense against the United States and also a distinct offense against the State, and the authority of these cases heretofore mentioned was in no wise shaken.

Several of the lower federal courts have held that a prosecution in the State courts for a violation of the State's liquor laws was no defense to a prosecution in the federal courts for a violation of the Volstead law. *United States* v. *Holt* (D. C.), 270 Fed., 639; *Martin* v. *United States* (C. C. A.), 271 Fed., 685; *United States* v. *Bostow* (D. C.), 273 Fed., 535; *United States* v. *Regan* (D. C.), 273 Fed., 727.

The Georgia courts have held that a prosecution in the federal courts for a violation of the federal liquor laws was not a bar to a prosecution in the State courts for a violation of the State laws. *Bryson* v. *State* (Ga. App.), 108 S. E., 63; *Moore* v. *State* (Ga. App.), 108 S. E., 65.

We are of opinion, therefore, that an offender may be punished for the same act by the State courts when he transgresses the liquor laws of the State, although he has previously been punished for such act in the federal courts under the federal liquor laws. This conclusion is sustained by the weight of authority. For other cases see note 31 L. R. A. (N. S.), 693, and note 16 A. L. R., 1231.

The case presented is somewhat similar to the case of one convicted of the violation of a municipal ordinance. It has frequently been held in this State that such a conviction in the city courts is not bar to a prosecution under the State laws. *Greenwood* v. *State*, 65 Tenn. (6 Bax.), 567, 32 Am. Rep., 539; *State* v. *Mason*, 71 Tenn. (3 Lea), 649; *State* v. *Taxing District, Shelby County*, 84 Tenn.

(16 Lea), 240; *O'Haver* v. *Montgomery,* 120 Tenn., 448, 111 S. W., 449, 127 Am. St. Rep., 1014. This is the general rule. Cases in note 31 L. R. A. (N. S.), 693.

Counsel refer to remarks of Chief Justice TANEY in *United States* v. *Amy,* 14 Md., 149, Fed. Cas., No. 14,445, to the effect that a man ought not to be punished twice for the same offense, and, if a party had been punished for the same act in the state court, he would have felt it to be his duty to suspend sentence and represent the facts to the president with a view to obtaining a pardon. This observation has been noted by some of the federal judges in disposing of cases like the one before us. It is urged that it is contrary to the nature and genius of our government to punish an individual twice for the same offense. The supreme court, however, in *Fox* v. *State of Ohio,* supra, said that instances might occur "where the public safety demanded extraordinary rigor."

Combined efforts of the federal government and the State government so far have fallen far short of making effective the laws enforcing the Eighteenth Amendment. The times are scarcely propitious for a relaxation on the part of the courts of either government of their available powers.

At any rate, the facts of this case are not before us. The courts of this State have no power to suspend sentences. Certainly the courts could make no recommendation to the governor until all the facts of a particular case were developed. The trial courts may take into consideration any punishment visited upon an offender of this character in the federal courts, along with all the other circumstances appearing, when they come to assess their own penalties. Likewise in a proper case our courts will

State v. Rhodes.

make a recommendation to the governor. This however, is a matter of grace.

For the reasons stated, the judgment of the trial court will be reversed, and this case remanded for further proceedings.

The foregoing conclusions find support in *Youmon* v. *Commonwealth,* 193 Ky., 536, 237 S. W., 6.