Carl Edward LAVON, Sr., Petitioner,

v.

STATE of Tennessee, Respondent.

Supreme Court of Tennessee.

Sept. 4, 1979.

David O. Kemp, Bolivar, for petitioner.

John F. Southworth, Jr., Asst. Atty. Gen., William Leech, Jr., Atty. Gen., State of Tennessee, Nashville, for respondent.

## OPINION

COOPER, Justice.

We granted certiorari in this case to consider the defendant's claim that successive prosecutions in state and federal court, predicated on the same act, violated constitutional guarantees against double jeopardy. We hold that they do not.

In December, 1976, the defendant robbed a bank in Hardeman County, Tennessee, at gunpoint. As a result, he was indicted by a federal grand jury for the robbery of a federally insured bank, as proscribed by 18 U.S.C. § 2113(a). He was also indicted by the Hardeman County grand jury for bank robbery with the use of a firearm, T.C.A. §§ 39–3902 & 39–4914. Subsequently, he pled guilty to the federal indictment. The defendant then sought to have the state indictments dismissed. The trial judge granted the motion, holding, with respect to the charge of bank robbery, that this second prosecution for the same act would subject the defendant to double jeopardy. The trial judge also dismissed the indictment for the use of a firearm in the commission of a felony, T.C.A. § 39–3414, on the grounds, first, that it too subjected the defendant to double jeopardy, secondly, that it was a lesser offense that merged in the greater offense of bank robbery, and thirdly, that the statute was an unconstitutional encroachment on the authority of the courts to administer justice. On appeal, the Court of Criminal Appeals reversed, and reinstated both indictments.

The defendant has made no specific assignments of error before this court, instead merely asserting, in general terms, that the Court of Criminal Appeals was incorrect. This is insufficient to comply with the rules of this court. Supreme Court Rule 14. Nevertheless, we have considered the petition, and attempted to glean from defendant's argument the substance of his claim. *See Renner v. State,* 187 Tenn. 647, 216 S.W.2d 345 (1948).

As we noted before, the primary issue raised by the defendant, and the one that prompted our grant of certiorari, is whether the defendant's trial in state court on a charge of bank robbery, after his previous conviction in federal court for the same offense on the basis of the same act, either would constitute double jeopardy so as to be forbidden by the federal or Tennessee constitutions, or would so offend against the fairness that underlies our system of justice as to be otherwise unacceptable.

There is no question but that such a procedure does not subject the defendant to double jeopardy insofar as the guaranty of due process in the 14th amendment of the federal constitution is concerned. *Bartkus v. Illinois,* 359 U.S. 121, 79 S.Ct. 676, 3 L.Ed.2d 684 (1959). While the rationale of this case—that the state and federal governments are distinct sovereignties, and

thus the punishment of a single act by each is not double jeopardy—has been criticized, a similar approach has provided the basis for a more recent case, which would imply that *Bartkus'* analysis of the issue is still valid. *See United States v. Wheeler,* 435 U.S. 313, 98 S.Ct. 1079, 55 L.Ed.2d 303 (1978). This court is bound by the decisions of the United States Supreme Court concerning the proper interpretation of the federal constitution. *Townsend v. Clover Bottom Hospital and School,* 560 S.W.2d 623 (Tenn.1978).

The double jeopardy provision of the Tennessee constitution, Article I, § 10, affords the defendant no greater protection. In the past, this provision has been interpreted to permit successive state and federal prosecutions on the basis of the same "dual sovereignties" analysis employed in *Bartkus, supra,* and, given the need for stability in constitutional interpretation, we see insufficient cause to depart from that precedent now. *See, e. g., State v. Rhodes,* 146 Tenn. 398, 242 S.W. 642 (1922); *Beard v. State,* 485 S.W.2d 882 (Tenn.Cr.App.1972). A similar approach has been adopted by the vast majority of other jurisdictions in which the question has not been settled by statute. *See, e. g., State v. Castonguay,* 240 A.2d 747 (Me.1968); *State v. Cooper,* 54 N.J. 330, 255 A.2d 232 (1969); *State v. Rogers,* 90 N.M. 604, 566 P.2d 1142 (1977); *State v. West,* 260 N.W.2d 215 (S.D.1977).

A more difficult question is whether this court should nevertheless place some restrictions on this practice of successive prosecutions, even in the absence of a constitutional basis for such a holding. We have concluded that we should not. We have grave doubts as to the inherent fairness of any procedure that forces an individual to defend himself against multiple prosecutions for the same crime. The burden placed on a defendant in such a case is no less if the prosecutions are carried out by two sovereigns rather than one. *See Bartkus v. Illinois,* 359 U.S. at 150–164, 79 S.Ct. 676, Justice Black dissenting. However, we have even graver doubts as to the propriety of this court abandoning such a firmly established rule of law, absent compelling cir-

cumstances. Established precedent, frequently reaffirmed by this court, and long accepted by the legislature, should not be departed from lightly. *Hall v. Skidmore,* 180 Tenn. 23, 171 S.W.2d 274 (1943). *See also Edingbourgh v. Sears, Roebuck & Co.,* 206 Tenn. 660, 337 S.W.2d 13 (1960); *Monday v. Millsaps,* 197 Tenn. 295, 271 S.W.2d 857 (1954). As was said in a similar context:

> We appreciate the ease with which, if we were careless or ignorant of precedent, we might deem it enlightened to [adopt such a rule]. We do not forget the continuous process of developing the law that goes on through the courts, in the form of deduction, or deny that in a clear case it might be possible even to break away from a line of decisions in favor of some rule generally admitted to be based on a deeper insight into the present wants of society. But the improvements made by the courts are made, almost invariably, by very slow degrees and by very short steps. Their general duty is not to change, but to work out, the principles already sanctioned by the practice of the past. No one supposes that a judge is at liberty to decide with sole reference to his strongest convictions of policy and right. His duty in general is to develop the principles which he finds, with such consistency as he may be able to attain. *Stack v. New York, N. H. & H. R. Co.,* 177 Mass. 155, 58 N.E. 686, 687 (1900) (Holmes, C. J.).

At present, "we perceive no such pressing need of our anticipating the legislature as to justify our departure from what we cannot doubt is the settled tradition of the common law." *Idem,* at 58 N.E. 687. Certainly, the equities of this case do not demand it: The defendant pled guilty in federal court, and received a sentence of twelve years for a crime that the legislature of this state has deemed so serious as to require a minimum punishment of twenty years. T.C.A. § 39–3902. Furthermore, should the defendant be convicted of the state charges, the trial judge at that time may mitigate any oppressive effects that

the dual convictions might have, such as by ordering the state sentence run concurrently with that imposed in federal court, as the record before him may demand. *See* Rule 32(b), Tennessee Rules of Criminal Procedure; *State v. Graham,* 544 S.W.2d 921 (Tenn.Cr.App.1976). Thus, we hold that the question of the propriety of successive state and federal prosecutions for the same act, being essentially one of policy, is best "committed to the intelligence and discretion" of the legislature, and we leave it to their considered judgment. *Rush v. Great American Insurance Co.,* 213 Tenn. 506, 376 S.W.2d 454, 459 (1964). *See State v. Rogers,* 90 N.M. 604, 566 P.2d 1142 (1977).[1]

■ The other issues alluded to by the defendant are worthy of only brief consideration, as he himself tacitly admits. As it has been construed by this court, T.C.A. § 39–4914 provides for enhanced punishment for those who commit certain crimes with the use of a firearm, and thus is not merged into the offense of bank robbery, nor does the prosecution of the defendant under that statute as well as under the statute proscribing bank robbery subject him to double jeopardy. *See State v. Hudson,* 562 S.W.2d 416 (Tenn.1978). As the setting of punishment is a legislative function, the mandatory aspects of the sentence imposed by T.C.A. § 39–4914 do not constitute an unconstitutional encroachment on the power of the judiciary. *Cf. Sandford v. Pearson,* 190 Tenn. 652, 231 S.W.2d 336 (1950).

The judgment of the Court of Criminal Appeals is affirmed, and the case remanded to the trial court for further proceedings.

FONES and HARBISON, JJ., concur.

HENRY, C. J., and BROCK, J., dissent.

BROCK, Justice, dissenting.

In writing the opinion for the Court, Mr. Justice Cooper, as he customarily does, has accurately and fairly stated the law as it presently exists and is pertinent to this case in which the State of Tennessee seeks to prosecute and punish the defendant for robbing a bank in Hardeman County, although he has already been tried by the Federal Government and sentenced to a term of 12 years for the same robbery.

Nevertheless, I respectfully dissent from the decision of the Court holding that the State may proceed with a second trial and punishment. I do so although it appears that the United States Supreme Court, as indicated in its recent decision in *United States v. Wheeler,* 435 U.S. 313, 98 S.Ct. 1079, 55 L.Ed.2d 303 (1978), still takes the position that the double jeopardy and due process clauses of the Constitution of the United States permit not only double jeopardy but also double punishment for the same conduct so long as that conduct is proscribed both by an act of Congress and a state statute.

Although it may be permissible under the Federal Constitution as presently interpreted for Tennessee to try the petitioner, Lavon, a second time and to punish him a second time for the single act of robbing the Hardeman County bank, I am unwilling to agree that such procedure complies with the Constitution of the State of Tennessee. I would interpret the double jeopardy provision of Article I, Section 10, and the "law of the land" provision of Article I, Section 8, of the Constitution of Tennessee, to prohibit such double jeopardy and double punishment under the circumstances of this case.

For the purpose of construing and applying the double jeopardy provision of Article I, Section 10, of the Constitution of Tennessee,[1] I would hold that a substantial identi-

---

1. It is noteworthy that, of the more than twenty jurisdictions that have either abandoned or modified the "dual sovereignty" doctrine, we have found only four that have done so by judicial decision, rather than by statute. *See Commonwealth v. Cepulonis,* 373 N.E.2d 1136 (Mass.1978); *People v. Cooper,* 398 Mich. 450,

247 N.W.2d 866 (1976); *State v. Hogg,* 385 A.2d 844 (N.H.1978); *Commonwealth v. Mills,* 447 Pa. 163, 286 A.2d 638 (1971).

1. "That no person shall, for the same offense, be twice put in jeopardy of life or limb." Article I, Section 10, Constitution of Tennessee.

ty of offenses exists when an act of Congress and a statute of the Tennessee legislature each proscribes essentially the same conduct, as in this case the robbery of a bank, and prescribes substantial punishment for the offender, as is also true in the instant case. If, at the time the State prosecution came on for trial, it were shown that the defendant had been either acquitted or convicted in the Federal court for the substantially identical offense, I would hold that his further prosecution by the State is prohibited by Article I, Section 10, and by Article I, Section 8, of the Constitution of Tennessee. It is my view that such a procedure would more nearly comport with common sense, the sentiments of our people, and serve to implement the protection against double jeopardy embedded in the Constitutions of both the nation and the state than does the opinion of the Court in the instant case. *See, Commonwealth v. Mills,* 447 Pa. 163, 286 A.2d 638 (1971); *People v. Cooper,* 398 Mich. 450, 247 N.W.2d 866 (1976); *State v. Hogg,* N.H., 385 A.2d 544 (1978).

Because he says it so well, I adopt, as an expression of my own views, the following excerpt from the dissenting opinion of Mr. Justice Black, writing for himself, Chief Justice Warren and Mr. Justice Douglas, in *Bartkus v. People of State of Illinois,* 359 U.S. 121, 79 S.Ct. 676, 3 L.Ed.2d 684 (1959), to wit:

"Fear and abhorrence of governmental power to try people twice for the same conduct is one of the oldest ideas found in western civilization. Its roots run deep into the Greek and Roman times. Even in the Dark Ages, when so many other principles of justice were lost, the idea that one trial and one punishment were enough remained alive through the canon law and the teachings of the early Christian writers. By the thirteenth century it seems to have been firmly established in England, where it came to be considered as a 'universal maxim of the common law.' It is not surprising, therefore, that the principle was brought to this country by the earliest settlers as part of their heritage of freedom, and that it has been recognized here as fundamental again and again. Today it is found, in varying forms, not only in the Federal Constitution, but in the jurisprudence or constitutions of every State, as well as most foreign nations. It has, in fact, been described as a part of all advanced systems of law and as one of those universal principles "of reason, justice, and conscience, of which Cicero said:

'Nor is it one thing at Rome and another at Athens, one now and another in the future, but among all nations it is the same.' "

While some writers have explained the opposition to double prosecutions by emphasizing the injustice inherent in two punishments for the same act, and others have stressed the dangers to the innocent from allowing the full power of the state to be brought against them in two trials, the basic and recurring theme has always simply been that it is wrong for a man to 'be brought into Danger for the same Offense more than once.' Few principles have been more deeply 'rooted in the traditions and conscience of our people.' The Court apparently takes the position that a second trial for the same act is somehow less offensive if one of the trials is conducted by the Federal Government and the other by a State. Looked at from the standpoint of the individual who is being prosecuted, this notion is too subtle for me to grasp. If double punishment is what is feared, it hurts no less for two 'Sovereigns' to inflict it then for one. If danger to the innocent is emphasized, that danger is surely no less when the power of the State and Federal Governments is brought to bear on one man in two trials, than when one of these 'Sovereigns' proceeds alone. In each case, inescapably, a man is forced to face danger twice for the same conduct.

The Court, without denying the almost universal abhorrence of such double prosecutions, nevertheless justifies the practice here in the name of 'federalism.' This, it seems to me, is a misuse and desecration of the concept. Our Federal

Union was conceived and created 'to establish Justice' and to 'secure the Blessings of Liberty,' not to destroy any of the bulwarks on which both freedom and justice depend. We should, therefore, be suspicious of any supposed 'requirements' of 'federalism' which result in obliterating ancient safeguards. I have been shown nothing in the history of our Union, in the writings of its Founders, or elsewhere, to indicate that individual rights deemed essential by both State and Nation were to be lost through the combined operations of the two governments. Nor has the Court given any sound reason for thinking that the successful operation of our dual system of government depends in the slightest on the power to try people twice for the same act." 79 S.Ct. at 696–98.

Accordingly, I would reverse the judgment of the Court of Appeals and affirm that of the trial court. I am authorized to say that Mr. Chief Justice HENRY joins in this dissent.