# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT NASHVILLE

### JANUARY SESSION, 1997

**FILED**

July 30, 1997

**Cecil W. Crowson**
Appellate Court Clerk

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | ) | **C.C.A. NO. 01C01-9602-CR-00076** |
| | ) | |
| Appellee, | ) | |
| | ) | |
| | ) | **DAVIDSON COUNTY** |
| **VS.** | ) | |
| | ) | **HON. J. RANDALL WYATT, JR.** |
| **CURTIS LEE MAJORS,** | ) | **JUDGE** |
| | ) | |
| Appellant. | ) | (Aggravated Robbery and Aggravated |
| | ) | Assault) |

## ON APPEAL FROM THE JUDGMENT OF THE
## CRIMINAL COURT OF DAVIDSON COUNTY

FOR THE APPELLANT:                    FOR THE APPELLEE:

JEFFREY A. DEVASHER                   CHARLES W. BURSON
Senior Assistant Public Defender      Attorney General and Reporter

STEPHEN G. YOUNG                      MICHAEL J. FAHEY II
Assistant Public Defender             Assistant Attorney General
1202 Stahlman Building                450 James Robertson Parkway
Nashville, TN 37201                   Nashville, TN 37243-0493

                                      VICTOR S. JOHNSON
                                      District Attorney General

                                      KATRIN N. MILLER
                                      Assistant District Attorney
                                      Washington Square, Suite 500
                                      222 Second Avenue North
                                      Nashville, TN 37201-1649

OPINION FILED _____

AFFIRMED AS MODIFIED

DAVID H. WELLES, JUDGE

# OPINION

This is an appeal as of right pursuant to Rule 3 of the Tennessee Rules of Appellate Procedure. The Defendant, Curtis Lee Majors, was convicted by a Davidson County jury of one count of aggravated robbery and two counts of aggravated assault. He was sentenced as a Range II, multiple offender to seventeen years (17) for the aggravated robbery conviction and nine (9) years for each conviction for aggravated assault, all to be served concurrently. In this appeal, the Defendant raises several issues for review: (1) That the trial court erred by failing to suppress the testimony of eyewitnesses because of an impermissibly suggestive showup; (2) that the admission of an audiotape of an unavailable witness was error; (3) that the special jury instruction requiring the trial court to charge the length of time the Defendant would serve before being paroled is unconstitutional; and (4) that the sentences imposed were excessive. We affirm the Defendant's convictions, but modify the sentences.

We begin with a summary of the facts. At approximately 9:00 p.m. on August 21, 1994, at the Mrs. Winner's restaurant on Nolensville Road in Nashville, three employees, Marla Kay Cox, Wemi Andeleru, and James Burt were preparing to close the restaurant. Business was slow and no customers were in the restaurant at that time. Ms. Cox and Mr. Burt were cleaning in the dining room. A man entered the restaurant and immediately went into the bathroom. Both Ms. Cox and Mr. Burt recognized the man as the Defendant, Curtis Lee Majors. However, the employees knew the Defendant as a former coworker and by an alias, Curtis Patterson. They described the robber as a

large man who was approximately 5'11" in height and who weighed approximately 225 pounds and had a "pot belly." These descriptions were very similar to the Defendant's physical features.

Ms. Cox and Mr. Burt went behind the serving counter and joined Ms. Andeleru. Another employee, the district manager, was in a rear office and did not witness the robbery. Ms. Cox testified that she knew no other customers came in and that the man in the bathroom did not leave because a chime would go off when anyone opened the front door to the restaurant. All others exits were locked. After approximately twenty minutes, the Defendant burst through the door leading to the employee area behind the serving counter. He had a black revolver in one hand and a length of pipe in the other. He was wearing black pants, a black shirt or sweatshirt, pantyhose over his face and a black White Sox baseball cap, worn backwards. He demanded that the employees lie on the floor. He used the pipe to break open the "drop boxes" under the cash registers and took the cash. The robber then fled the restaurant.

Ms. Cox testified that the man who robbed the store was the Defendant, whom she knew as Curtis. She recalled that a week or two before the robbery, someone had stolen her paycheck from her purse while at work and a meeting was held regarding this. The Defendant was present, but no one was directly accused of the theft. Later, the Defendant confronted Ms. Cox and threatened to harm her if anyone said he had taken the check. Ms. Cox reported this to the manager and the Defendant soon thereafter discontinued working at Mrs. Winner's. It is not clear whether he was terminated or voluntarily resigned.

Ms. Andeleru did not see the Defendant enter the restaurant, but testified that the robber looked like him even though his face was obscured. She reported that the robber's physique was like the Defendant's and that he was "huge" and that she recognized his voice. Mr. Burt recognized the Defendant when he first entered the restaurant and identified the robber as the same man who went into the restaurant bathroom.

After the robber left, Mr. Burt went next door, called 911 and a police officer arrived at the scene within a few minutes. A description of the assailant was broadcast. Another officer searched the area near the restaurant. While on a nearby street, that officer saw a black male walking on the roadside. The man was wearing a red T-shirt, blue shorts and a White Sox cap. The officer radioed the officer on the scene and asked whether the robber was heavyset. The officer on the scene confirmed this description and also stated that the Defendant's name was Curtis. The officer drove along side the man and asked whether his name was Curtis and the Defendant answered "yes." He arrested the Defendant and took him back to Mrs. Winner's for a showup. The three witnesses identified the Defendant as the robber. The witnesses also noted that the Defendant was yelling from the police cruiser "What was the robber wearing?" The police officer testified that the Defendant yelled "What was I wearing? What was I supposed to be wearing?" The Defendant later claimed that he had been in the restaurant at approximately 8:30 to buy a drink. However, none of the employees recalled seeing him in the restaurant earlier that night.

The pipe was left in the restaurant. Other police officers recovered a pair of black sweatpants and a bank bag containing $770 in cash, which were hidden

in a nearby field. Pantyhose with the legs cut out were found in the parking lot. No gun was recovered. No fingerprints were obtained from the pipe or the restaurant because of a greasy film on the counter and glass surfaces.

The Defendant was charged with three counts aggravated robbery.[1] After the State presented its case-in-chief at trial, defense counsel moved for a judgment of acquittal as to all counts. The trial court granted the motion except for the first count against Ms. Cox because she was the assistant manager of the restaurant from whom the money was taken. As for the remaining counts, the trial court charged the jury with aggravated assault[2] as a lesser included offense of aggravated robbery. The Defendant was convicted of one count of aggravated robbery and two counts of aggravated assault.

I.

As his first issue, the Defendant charges that the trial court erred by denying his pretrial motion to suppress any in-court identification by the victims as tainted by a prior showup that was unduly suggestive. An identification procedure that is so impermissibly suggestive "as to give rise to a very substantial likelihood of irreparable misidentification" violates due process. Simmons v. United States, 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968). Although it may be suggestive, an identification may satisfy due process as reliable and admissible if the totality of the circumstances so warrants. See State v. Brown, 795 S.W.2d 689, 694 (Tenn. Crim. App. 1990). Five factors are to be

_____

[1] Tenn. Code Ann. § 39-13-402.

[2] Tenn. Code Ann. § 39-13-102.

considered when evaluating the propriety of the identification process. Neil v. Biggers, 409 U.S. 188, 199, 93 S.Ct. 375, 382, 34 L.Ed.2d 401 (1972); Bennett v. State, 530 S.W.2d 511, 514 (Tenn.), reh'g. denied (Tenn. 1975). These are: (1) The opportunity the witness had to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the criminal; (4) the level of certainty of the witness at the confrontation; and (5) the time between the crime and the confrontation. Brown, 795 S.W.2d at 694.

A showup is a form of identification of a defendant that is inherently suggestive. The use of showups to establish the identification of a person suspected of committing a criminal offense has been repeatedly condemned, Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967); Wadley v. State, 634 S.W.2d 658 (Tenn. Crim. App. 1982); State v. Beal, 614 S.W.2d 77 (Tenn. Crim. App. 1981);unless (a) there are imperative circumstances which necessitate a showup, Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967; Forbes v. State, 559 S.W.2d 318 (Tenn. 1977); State v. Moore, 596 S.W.2d 841 (Tenn. Crim. App. 1980) or (b) the showup occurs as an on-the-scene investigatory procedure shortly after the commission of the crime. State v. Thomas, 780 S.W.2d 379, 381 (Tenn. Crim. App. 1989); Johnson v. State, 596 S.W.2d 97 (Tenn. Crim. App. 1979); Russell v. State, 489 S.W.2d 535 (Tenn. Crim. App. 1972); Bracken v. State, 489 S.W.2d 261 (Tenn. Crim. App.1972).

In the case at bar, the Defendant was known to and had worked together with all three victims. Two of them clearly saw the Defendant enter the bathroom of the restaurant and did not see him leave the restaurant until he emerged in the

-6-

employee area. All were familiar with his body type and his voice. Although the Defendant's face was covered by pantyhose, his other features were identifying. In addition, the Defendant was apprehended not more than a few minutes after the robbery and on a street just behind the restaurant. The witnesses told the police that the perpetrator's name was Curtis and an officer arrested the Defendant after he acknowledged that his name was indeed Curtis. The Defendant was asking the victims from the police cruiser in which he was seated about the clothes the robber was wearing. Finally, all three victims identified the Defendant accurately and with certainty.

Although we acknowledge that showup identifications are inherently suggestive, we believe that these on-the-scene investigatory confrontations that occurred within a reasonable time after the commission of the offense are permissible. Therefore, the trial court did not err in denying the motion. This issue is without merit.

II.

As his next issue, the Defendant argues that trial court erred by failing to exclude the preliminary hearing testimony of an unavailable witness. James Burt, one of the witnesses present during the robbery, could not be located at the time of the trial. However, Burt testified at the preliminary hearing. His testimony was audio taped. The State moved to introduce Burt's testimony as a former testimony hearsay exception pursuant to Rule 804, Tennessee Rules of Evidence. The pertinent portion of that rule states:

(b) **Hearsay exceptions.** The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

(1) Former testimony.  Testimony given as a witness at another hearing of the same or a different proceeding . . . if the party against whom the testimony is now offered had both an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.

Tenn R. Evid. 804(b)(1).  The Advisory Commission Comment notes that "[t]he rule covers . . . preliminary hearing transcripts."

The Defendant first alleges that the State failed to prove the unavailability of the witness, James Burt, by admitting the affidavit of the State's investigator without allowing the Defendant to cross-examine him.  Also, he asserts that defense counsel did not have a "similar motive" at the preliminary hearing.  This, he claims, amounts to a violation of the Sixth and Fourteenth Amendments to the United States Constitution and Article I, section 9 of the Tennessee Constitution.

Our supreme court has addressed this issue as follows:

The same standards and criteria apply to both of the constitutional provisions.  State v. Armes, 607 S.W.2d 234, 236 (Tenn.1980).  The confrontation clause of the Sixth Amendment restricts the range of admissible hearsay in two ways.  First, the admission of the hearsay testimony must be necessary, i.e., the declarant must be unavailable.  Second, once the declarant is shown to be unavailable, some indicia of reliability must be shown.  Ohio v. Roberts, 448 U.S. 56, 65, 100 S.Ct. 2531, 2538-39, 65 L.Ed.2d 597 (1980). The indicia of reliability requirement is met by those hearsay exceptions resting upon such solid foundations that admission of virtually any evidence within them comports with the right of confrontation.  Id. at 66, 100 S.Ct. at 2539.

State v. Causby, 706 S.W.2d 628, 631 (Tenn. 1986).  The determination that a witness is unavailable requires a good faith effort by the State to locate the

witness. Armes, 607 S.W.2d at 237; State v. Arnold, 719 S.W.2d 543, 548 (Tenn. Crim. App. 1986).

Although it would have been preferable for the investigator to testify regarding his efforts to find the witness, we feel the proof submitted established a reasonable good faith effort. The State first attempted to serve a subpoena. After this failed, the State directed its investigator, Bob Chaudoin, to locate the witness. The investigator's affidavit admitted by the State chronicled his investigation. The affidavit reads as follows:

> I, Bob Chaudoin, being first duly sworn, do hereby state that I am an Investigator for the Office of the District Attorney General for the Twentieth Judicial District. As part of my duties, I am assigned to help locate witnesses. During the last few months I have tried to locate a James David Burt, male, white, DOB 4/15/64. I spoke to Rhonda A. Burt, the ex-wife of James, who related to me that she had not seen or heard from James in at least two months, nor has James sent her any money or called about his child. A computer check shows his last arrest as January 12, 1995, at which time he gave his address as 656 West Iris Drive which is a halfway house. His Tennessee Driver's License is suspended. The address in the computer shows an address of 123 Vickie Court, Nashville, Tennessee, 37211. A check with the owner of the duplex, who related that James was never on the lease of the duplex, had moved out in September 1994 owing over a thousand dollars, and his location was unknown. A credit check shows his last address as 123 Vickie Court (this was in June 1994). His last known employer was the Sylvan Park Restaurant located at 5207 Nolensville Road. He left there in September of last year with no forwarding address. His last known address at the restaurant was 123 Vickie Court. His mother in Palm Harbor, Florida, has not heard from him in months and is not sure if he is alive or dead and is very concerned for him.

The Defendant contends that because the investigator was out of town and did not testify about the contents of the affidavit, the Defendant was unable to cross-examine him. He complains that the investigator did not properly check the

halfway house address as his last known address and that with cross-examination, the Defendant may have proved that there was an insufficient showing of unavailability. Although we agree that it would have been preferable for the investigator to testify, the confrontation clause does not require that the source of proof of unavailability be cross-examined. The trial court reviewed the affidavit and determined that the witness was unavailable. This case is distinguishable from Armes, in which our supreme court found a lack of good faith. 607 S.W.2d at 237. There, the State was on notice after a witness did not appear at a first trial. Id. The State merely issued another subpoena and presented no admissible proof of its investigator's efforts to locate the witness. Id. Here, the State submitted an affidavit detailing the investigator's efforts. We believe that from the proof presented, there was a sufficient showing of a good faith effort to locate the witness to validly establish his unavailability.

The Defendant also argues that the trial court erred in admitting the former testimony under Rule 804(b)(1) because the motivation for cross-examining the witness at the preliminary hearing was different from that at trial. He contends that the focus of cross-examination at the preliminary hearing was to learn what the witness had seen and done at the time of the robbery. Conversely, he claims that the cross-examination at trial would have focused on the propriety of the witness' identification of the Defendant. He concludes that because defense counsel could not cross-examine the witness on this issue, he was deprived of his constitutional right to confront the witnesses against him.

The issues in the two proceedings are not required to be identical, but if they are "sufficiently similar," a similar motive may be concluded. State v. Howell,

868 S.W.2d 238, 251 (Tenn. 1993). It is clear that the Defendant had an opportunity at the preliminary hearing to confront Mr. Burt. The Defendant asserts, however, that the purpose of the cross-examination was to "learn everything that Burt had seen and done during and immediately after the robbery." Yet, the ultimate issues in question were whether the Defendant was the person who committed the robbery. We believe the motives at the preliminary hearing and at trial were sufficiently similar to support the introduction of the former testimony. There is no unfairness if a similar motive is present and defense counsel chose not to develop such testimony on cross-examination in the former proceeding for tactical or other reasons. Howell, 868 S.W.2d at 252.

This issue is without merit.

III.

As his third issue, the Defendant argues that the trial court erred by denying his motion to charge a special jury instruction regarding the range of punishments concerning his eventual eligibility for parole. He contends that this portion of the jury instruction is unconstitutional for vagueness, that it contravenes the separation of powers doctrine and that it denied him due process. He cites Article I, sections 8, 9, 17, 19, and Article II, sections 1 and 2 of the Tennessee Constitution and the Fifth, Sixth and Fourteenth Amendments to the United States Constitution.

The Defendant's counsel filed a motion to charge the jury on the range of punishment and a motion to exclude an instruction on parole eligibility as required

by Tennessee Code Annotated section 40-35-201. The trial court overruled the Defendant's motion to exclude the parole eligibility information because it is required by the statute. The statute reads:

> (b)(1) In all contested criminal cases, except for capital crimes which are governed by the procedures contained in §§ 39-13-204 and 39-13-205, upon the motion of either party, filed with the court prior to the selection of the jury, the court shall charge the possible penalties for the offense charged and all lesser included offenses.
>
> (2)(A)(i) When a charge as to possible penalties has been requested pursuant to subdivision (b)(1), the judge shall also include in the instructions for the jury to weigh and consider the meaning of a sentence of imprisonment for the offense charged and any lesser included offenses. Such instruction shall include an approximate calculation of the minimum number of years a person sentenced to imprisonment for the offense charged and lesser included offenses must serve before reaching such person's earliest release eligibility date. Such calculation shall include such factors as the release eligibility percentage established by § 40-35-501, maximum and minimum sentence reduction credits authorized by § 41-21-236 and the governor's power to reduce prison overcrowding pursuant to title 41, chapter 1, part 5, if applicable.

Tenn.Code Ann. § 40-35-201(b)(1) & (2)(A)(i). The Defendant now argues that he was prejudiced by this instruction which he requested.

The trial court instructed the jury that "the minimum number of years a person sentenced to imprisonment for this offense must serve before reaching the earliest possible release eligibility date is 1.65 years. This calculation is based on the minimum sentence possible (for aggravated robbery) which is 12 years." This was based on the 1994 amendment to the statute requiring that parole eligibility be charged. Acts 1994, ch. 847, § 1,2.

The Defendant cites Farris v. State, 535 S.W.2d 608 (Tenn. 1976), in which our supreme court determined that a jury instruction under former law was unconstitutional. This Court recently addressed this issue in State v. Howard E. King, C.C.A. No. 02C01-9601-CR-00032, Shelby County (Tenn. Crim. App, Jackson, Oct. 22, 1996), perm. to appeal granted (March 10, 1997). In that case we held that because Farris involved former law in which juries sentenced defendants, it did not apply to the case involving judge sentencing and noted that Farris held the statute unconstitutional regarding the jury's determination of punishment. Slip op. at 7. Even if we apply Farris, we conclude that the provision regarding parole eligibility in effect when Farris was decided is distinguishable from the current form of the statute when considering whether it is unconstitutionally vague.

The former provision, enacted in 1973, provided that "It shall be the further duty of the trial judge charging jurors in cases of criminal prosecutions for felony offenses to charge the said jury as to the provisions of this section and as to the provisions of §§ 40-3612, 40-3613, 41-332 and 41-334, wherever applicable." Tenn. Code Ann. § 40-2707 (repealed), amendment Acts 1973, ch. 163, § 2. Juries were provided with information that invited them to speculate about sentences because no approximation was provided. The Farris court concluded that "[j]urors should not be permitted to speculate on the length of sentences, discretionary parole, the accumulation of good and honor time and a whole conglomeration of contingent events which, if they come to pass at all, will come to pass in the future." Farris, 535 S.W.2d at 614.

Subsequently, the legislature has attempted to remedy this by supplying the estimated figures to juries rather than leaving them on their own to calculate parole eligibility by enacting sections (b)(2)(A)(ii) and (b)(2)(B). Tenn. Code Ann. § 40-35-201. They read:

> (2)(A)(ii) Such instructions to the jury shall also include a statement that whether a defendant is actually released from incarceration on the date when such defendant is first eligible for release is a discretionary decision made by the board of paroles based upon many factors, and that such board has the authority to require the defendant to serve the entire sentence imposed by the court.
>
> (B) On an annual basis, the department of correction shall provide each judge exercising criminal trial court jurisdiction with the approximate calculation required in subdivision (2)(a). Such calculation shall be broken down to show the effect of each factor used in making such calculation. If the calculation provided by the department to the judges changes because of a change in the law or correctional policy, court intervention, the governor's prison overcrowding policy or any other such circumstance, the department shall send a revised calculation to the judges as such changes occur.

As a result, juries are provided with a figure with the caveat that the actual time served may vary. Although an "approximate", we feel that this figure provides sufficient definition and is not unconstitutionally vague. Furthermore, jurors are protected from the wide open speculation that was apparent with the statutory section considered in Farris.

The Defendant next asserts that the relevant portions of the statute are a constitutionally impermissible encroachment on the judicial function by the legislature. We disagree. Some functions of the three departments of state government are necessarily overlapping and interdependent. We believe this is particularly true in our criminal justice system. See, e.g., Lavon v. State, 586 S.W.2d 112, 115 (Tenn. 1979); Underwood v. State, 529 S.W.2d 45, 47 (Tenn.

1975); <u>Woods v. State</u>, 130 Tenn. 100, 169 S.W. 558 (1914). We find this issue to be without merit.

The Defendant also charges that the calculation of the minimum number of years to be served unfairly misleads the jury because the actual time served may be longer. Tenn. Code Ann. § 40-35-201(b)(2)(A)(i). Therefore, he argues that he has been deprived of due process and the right to a fair and impartial jury. We disagree. He claims that the suggestion that parole eligibility dates may vary due to the decision by the Board of Paroles "based on many factors" invites the jury to speculate. Tenn. Code Ann. § 40-35-201(b)(2)(A)(ii). However, we do not believe this differs substantially from the charge of the "possible penalties for the offense charged and all lesser included offenses." Tenn. Code Ann. § 40-25-201(b)(1).

In the case <u>sub judice</u>, the trial judge charged the jury that "[t]he punishment for the offense of Aggravated Robbery in this case will be imprisonment for a period of not less than Twelve (12) years nor more than Twenty (20) years. . . . the Court will set the punishment after a separate sentencing hearing, and that punishment will be set within the applicable range of 12 to 20 years after review of all relevant factors." The range of punishment instruction, which the Defendant requested, provided an approximate number that had a potentially wide range for possible speculation, but no broader than that involved in the eligibility instruction.

The legislature has seen fit to provide juries with comprehensive information about the sentencing scheme when either party requests such an

instruction. The Defendant complains that the jury was unfairly informed of the earliest release date, but the latest release date has also been provided. It is possible that the Defendant could be sentenced to twenty years, of which the jury was informed, and serve the entire term while incarcerated. Thus, the maximum sentence was charged as well. We cannot conclude that the Defendant has been deprived of due process in this case.

This issue is without merit.

IV.

As his last issue, the Defendant asserts that the sentences imposed were excessive because the trial court misapplied three statutory enhancement factors. Furthermore, he notes that the trial court failed to specify which enhancement factors applied to which convictions.

When an accused challenges the length, range, or the manner of service of a sentence, this court has a duty to conduct a de novo review of the sentence with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).

In conducting a de novo review of a sentence, this court must consider: (a) the evidence, if any, received at the trial and the sentencing hearing; (b) the

presence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) any statutory mitigating or enhancement factors; (f) any statement that the defendant made on his own behalf; and (g) the potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-102, -103, and -210; see State v. Smith, 735 S.W.2d 859, 863 (Tenn. Crim. App. 1987).

If our review reflects that the trial court followed the statutory sentencing procedure, imposed a lawful sentence after having given due consideration and proper weight to the factors and principals set out under the sentencing law, and that the trial court's findings of fact are adequately supported by the record, then we may not modify the sentence even if we would have preferred a different result. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

The trial court found five statutory enhancement factors: (1) That the Defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range; (3) that the offense involved more than one person; (10) that the Defendant had no hesitation about committing a crime when the risk to human life was high; (13)(B) that the felony was committed while the Defendant was on probation; and (16) that the crime was committed under circumstances under which the potential for bodily injury to a victim was great. Tenn. Code Ann. § 40-35-114(1),(3),(10),(13)(B) and (16). The trial court found no mitigating factors.

As an initial matter, we agree that the trial court misapplied enhancement factors and did not individually specify how each enhancement factor applied to

-17-

each conviction. As a result, we review the Defendant's sentence de novo without the presumption of correctness.

During the sentencing hearing, the trial court enhanced the Defendant's sentences based upon a number of factors. First, the court found that the Defendant had a previous history of criminal convictions and criminal behavior as reflected in the presentence report that were beyond those necessary to establish him as a Range II offender. We find that the court properly considered the Defendant's prior convictions in enhancing his sentences for aggravated robbery and for both counts of aggravated assault. Tenn. Code Ann. § 40-35-114(1). Also, the trial court applied enhancement factor (13)(B), that the offense was committed while the Defendant was on probation. Tenn. Code Ann. § 40-35-114(13)(B). The Defendant does not contest the use of this factor and we agree that it is applicable to all three convictions.

The trial court found that the offenses involved more than one victim. Tenn. Code Ann. § 40-35-114(3). The robbery at Mrs. Winner's involved three persons. Here, the Defendant was convicted separately for an offense for each victim. This Court has held that this factor may not be applied to enhance a sentence when the defendant is separately convicted of the offenses committed against each victim. State v. Williamson, 919 S.W.2d 69, 82 (Tenn. Crim. App. 1995); State v. McKnight, 900 S.W.2d 36, 54 (Tenn. Crim. App. 1994); State v. Makoka, 885 S.W.2d 366, 373 (Tenn. Crim. App. 1994); State v. Lambert, 741 S.W.2d 127 (Tenn. Crim. App. 1987). Indeed, the State concedes that this factor may have been misapplied. Accordingly, we find that this enhancement factor was not applicable.

The trial court also applied enhancement factors (10), that the Defendant had no hesitation about committing a crime when the risk to human life was high, and (16) that the crime was committed under circumstances under which the potential for bodily injury to a victim was great. Tenn. Code Ann. § 40-35-114(10), (16). The Defendant contends that the trial court misapplied both factors as double enhancement because they duplicate the elements inherent in the offenses of aggravated robbery and aggravated assault. The State counters that these crimes have additional factual circumstances that justify the application of factors (10) and (16); namely, that the Defendant yelled :"Get down or I'll blow your heads off" while waving the gun, and that he also possessed a pipe. However, we believe that these circumstances are associated with the element of the use of a deadly weapon upon which the Defendant was convicted.

We agree with the Defendant that the trial court should not have applied these factors because they are inherent in the offenses of aggravated robbery, See, e.g., State v. Claybrooks, 910 S.W.2d 868, 872 (Tenn. Crim. App. 1994) (factors (10) and (16) inapplicable); State v. Strickland, 885 S.W.2d 85, 89 (Tenn. Crim. App. 1993)(factor (10) inapplicable), and aggravated assault. See, e.g., State v. Hill, 885 S.W.2d 357, 363 (Tenn. Crim. App 1994)(factors (10) and (16) inapplicable). All three offenses for which the Defendant was convicted were based on the same set of facts and were dependent upon the use of a deadly weapon. Such use carries with it inherent risks to human life and for bodily injury. No persons other than the victims were present who were at risk, thus, these enhancement factors constitute elements of the offenses. The Defendant's yelling at the victims and possession of the pipe are not sufficient additional facts to justify such enhancement. Therefore, enhancement factors (10) and (16)

should not have been applied to the aggravated robbery conviction nor to the two convictions for aggravated assault.

The trial court sentenced the Defendant to seventeen (17) years for the aggravated robbery conviction and nine (9) years for each conviction for aggravated assault, to be served concurrently. The appropriate sentence range for a multiple offender for aggravated robbery, a Class B felony, is twelve (12) to twenty (20) years. The sentence range for aggravated assault, a Class C felony, is six (6) to ten (10) years. Because we have found three enhancement factors to be inapplicable for each conviction, we are compelled to modify the Defendant's sentences. Accordingly, we reduce the sentence for aggravated robbery to fifteen (15) years and each aggravated assault conviction to seven (7) years, to run concurrently for an effective sentence of fifteen (15) years.

After carefully reviewing the issues and the record in this case, we affirm the judgment of the trial court but modify the sentences. We remand to the trial court solely for entry of a judgment consistent with this opinion.

_____
DAVID H. WELLES, JUDGE

CONCUR:

_____
JOHN H. PEAY, JUDGE


_____
JERRY L. SMITH, JUDGE