IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT KNOXVILLE

APRIL 1997 SESSION

FILED

March 27, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | C.C.A. No. 03C01-9610-CR-00379 |
| | ) | |
| Appellee, | ) | HAMILTON COUNTY |
| | ) | |
| VS. | ) | **HON. STEPHEN M. BEVIL, JUDGE** |
| | ) | |
| MICHAEL DEANGELO GREEN, | ) | (Murder First Degree, Criminal |
| | ) | Attempt: Especially Aggravated |
| Appellant. | ) | Robbery, Aggravated Robbery- 6 |
| | ) | Counts, Aggravated Assault- 2 |
| | ) | Counts, Theft- 2 Counts) |

FOR THE APPELLANT:

**EDWARD T. LANDIS**
Suite 327, Doctors Building
744 McCallie Avenue
Chattanooga, TN 37408

FOR THE APPELLEE:

**JOHN KNOX WALKUP**
Attorney General and Reporter

**MICHAEL J. FAHEY, II**
Assistant Attorney General
450 James Robertson Parkway
Nashville, TN 37243-0493

**GARY D. GERBITZ**
District Attorney General

**DAVID DENNY**
Assistant District Attorney General
Suite 300, Court Building
Chattanooga, TN 37402

**OPINION FILED:** _____

**AFFIRMED**

**CHRIS CRAFT,
SPECIAL JUDGE**

**O P I N I O N**

The defendant, Michael Deangelo Green, was tried by a Hamilton County jury on twelve indictments, all consolidated for trial, which resulted from a crime spree committed between July 6 and July 11, 1993. The indictment numbers, dates of offense, resulting convictions and name of each victim are set out below:

| Indictment # | Date | Offense Charged | Victim |
|---|---|---|---|
| 204819 | 7/6/93 | Theft over $1,000 | Melinda Davidson |
| 204813 | 7/6/93 | Aggravated Robbery | Earl Guilmenot |
| 204814 | 7/6/93 | Aggravated Robbery | Michelle Morgan |
| 204816 | 7/6/93 | Aggravated Robbery | Ginger Brown |
| 204817 | 7/6/93 | Aggravated Robbery | Kristi Wilson |
| 204818 | 7/7/93 | Aggravated Robbery | Jason Peace |
| 204820 | 7/7/93 | Murder First Degree | Jeffrey Wolfe |
| 204812 | 7/7/93 | Criminal Attempt, to wit: Esp. Aggravated Robbery | Jeffrey Wolfe |
| 200144 | 7/11/93 | Theft over $500 | Minnie Hewlett |
| 200090 | 7/11/93 | Aggravated Assault | Lashanna Acklin |
| 200091 | 7/11/93 | Aggravated Assault | Lorenzo Suttles |
| 200089 | 7/11/93 | Aggravated Robbery | William Townsend |

Proof at the trial showed that on July 6, 1993, appellant, along with four other young men, stole Ms. Davidson's car, then stopped a pedestrian, Mr. Guilmenot, and forced him to disrobe, robbing him of his clothes at gunpoint. They then forced Ms. Morgan's car off the road into a ditch, and robbed her of her purse. Next they forced Ms. Brown and Ms. Wilson off the road, taking money from Ms. Wilson and the car from Ms. Brown, abandoning Ms. Davidson's car. Shortly after midnight they pulled in front of Mr. Peace's car and robbed him at gunpoint of his wallet, some money and a radio. Appellant next approached Mr. Wolfe and his wife, who were stopped at a red light, put a gun to Mr. Wolfe's head and demanded that they get out of the car. The gun went off, killing Mr. Wolfe. Appellant and the other young men then fled. Three days later, on July 11, 1993, appellant and some of the same young men stole another car belonging to Ms. Hewlett, and in the process of driving it around, pointed guns at

2

two pedestrians, forcing Ms. Acklin to disrobe and beating Mr. Suttles unconscious. They then forced Mr. Townsend off his porch and robbed him at gunpoint of $50 in cash and $200 in food stamps. The police soon pulled in behind them, and apprehended them after a chase. Appellant was the leader, always displayed a firearm, and was the driver of all the cars used in the crimes.

Appellant appeals as of right from those verdicts and presents four issues for our review:

(1) whether it is constitutionally permissible to try appellant in state court following his federal court trial on the same facts,

(2) whether the trial court erred in denying a change of venue due to extensive pretrial publicity,

(3) whether the trial court erred in failing to strike the testimony of a witness, or in the alternative, to grant a mistrial, when the State failed to turn over a prior statement of that witness upon request, after his testimony, and

(4) whether the trial court erred in failing to grant appellant's motion for judgment of acquittal as to three of the indictments.

## APPELLANT'S FEDERAL TRIAL

Appellant was first tried in the United States District Court for the Eastern District of Tennessee on a six count indictment charging him with conspiracy to commit armed carjacking resulting in death, the basis for that indictment being the offenses committed July 6-7, 1993, the subject of eight of the Hamilton County indictments. Appellant was convicted in federal court, and was sentenced on September 12, 1994, to life plus 25 years in the penitentiary for those offenses. He now complains that retrying him for those same offenses in state court constitutes double jeopardy and violates his right to due process.

The longstanding principle of dual sovereignty contemplates that a conviction for the same identical offense by a court of another sovereign does not constitute double jeopardy. Raybin, **Tennessee Criminal Practice and Procedure**, § 16.112 (1984 & Supp. 1997). The Tennessee Supreme Court, in Lavon v. State, 586 S.W.2d 112, 113-114 (Tenn. 1979), held that

> [t]here is no question but that such a procedure does not subject the defendant to double jeopardy insofar as the guaranty of due process in the 14th amendment of the federal constitution is concerned. Bartkus v. Illinois, 359 U.S. 121, 79 S.Ct. 676, 3 L.Ed.2d 684 (1959). While the rationale of this case -- that the state and federal governments are distinct sovereignties, and thus the

3

> punishment of a single act by each is not double jeopardy -- has been criticized, a similar approach has provided the basis for a more recent case, which would imply that Bartkus' analysis of the issue is still valid. See United States v. Wheeler, 435 U.S. 313, 98 S.Ct. 1079, 55 L.Ed.2d 303 (1978). This court is bound by the decisions of the United States Supreme Court concerning the proper interpretation of the federal constitution. Townsend v. Clover Bottom Hospital and School, 560 S.W.2d 623 (Tenn.1978).
>
> The double jeopardy provision of the Tennessee constitution, Article I, § 10, affords the defendant no greater protection. In the past, this provision has been interpreted to permit successive state and federal prosecutions on the basis of the same "dual sovereignties" analysis employed in Bartkus, supra, and, given the need for stability in constitutional interpretation, we see insufficient cause to depart from that precedent now.

See also Heath v. Alabama, 474 U.S. 82, 106 S.Ct. 433, 88 L.Ed.2d 387 (1985).

Thus, in violating the laws of two sovereigns, appellant can be successively prosecuted under the laws of both without subjecting him to double jeopardy. State v. Wyche, 914 S.W.2d 558, 561 (Tenn. Crim. App. 1995).

Furthermore, appellant was convicted in federal court of conspiracy to commit carjacking while possessing a loaded firearm, which is a different offense from the ones charged in the Hamilton County indictments. "On examination of the predicate federal charges as contrasted with the State charges it is readily apparent that distinct substantive offenses are laid by the federal indictment and the State [indictments.] One factual base may be the foundation for multiple substantive offenses with distinct, separate, and indispensable elements. Conspiracy charges are distinct from charges of the consummated substantive offenses." State v. Frank Mongione, No. 115 (Tenn. Crim. App, Knoxville, January 31, 1991). Therefore, no due process or double jeopardy problem arises from the subsequent state prosecution.

**DENIAL OF CHANGE OF VENUE**

Appellant filed a motion for change of venue due to the pretrial publicity given the murder and the subsequent federal trial. At the hearing on the motion, appellant requested that the trial judge reserve the motion for change of venue until the day of trial, to see whether or not appellant could get an untainted jury. During the voir dire, forty eight of the jurors, approximately half, indicated they had heard something about the murder, and they were then individually voir dired by the trial judge and attorneys concerning their knowledge of the case, and their ability to be fair. Only two jurors had to be excused because they indicated that they had followed the case, were familiar

4

with the details, and had formed an opinion of appellant's guilt. Two jurors were also excused for other reasons, one because he knew the victims, and another because he had been a witness in a trial concerning his neighbor's murder. All the other jurors examined indicated that they remembered no details other than that a man had been killed during an attempted car theft, and all indicated that they could give appellant a fair trial. None of the jurors examined had any knowledge of appellant's federal trial or conviction. The trial judge therefore found that appellant could get a fair jury without a change of venue, and denied the motion. A jury of twelve, plus three alternates, was selected and sworn, only seven peremptory challenges having been exercised by both sides combined.

Appellant has not established that his jury was tainted by the pre-trial publicity. Whether to change venue because the jury might not be impartial is a matter which addresses itself to the sound discretion of the trial court; the appellate court will not interfere with the exercise of discretion absent clear abuse. State v. Melson, 638 S.W.2d 342, 360 (Tenn. 1982), cert. denied, 459 U.S. 1137, 74 L. Ed. 2d 983, 103 S. Ct. 770 (1983). Generally, the accused must demonstrate that the jurors who heard the case were biased or prejudiced because of pre-trial publicity. A long list of factors to consider in deciding whether venue should be changed is contained in State v. Hoover, 594 S.W.2d 743, 746 (Tenn. Crim. App. 1979). Prejudice will not be presumed on the mere showing that there was considerable pre-trial publicity. Extensive knowledge in the community of the crimes of the alleged offender is not sufficient by itself to render a trial constitutionally unfair. State v. Stapleton, 638 S.W.2d 850, 856 (Tenn. Crim. App. 1982), citing Dobbert v. Florida, 432 U.S. 282, 303, 53 L. Ed. 2d 344, 97 S. Ct. 2290 (1977); see also State v. Kyger, 787 S.W.2d 13, 19 (Tenn. Crim. App. 1989). Here, the petitioner failed to demonstrate the kind of bias or prejudice that would have precluded a fair trial.

**INTERVIEW SUMMARY OF THADDEUS DANIEL**

The first witness called by the state was Thaddeus Daniel, one of the juveniles who accompanied appellant during the series of crimes for which he was on trial.

5

Daniel indicated during his testimony that he had also "told what happened" when he was in juvenile court, prior to being offered a 20 year settlement. At the conclusion of direct examination, but prior to cross-examination, appellant's attorney informed the trial judge in front of the jury that he needed time to review the witness's "rather lengthy previous statement." The state then informed the trial judge, also in front of the jury, that the defense had possessed the statement for some time. After both attorneys were asked to approach the bench, the state accused appellant's attorney of "theatrics." Appellant's attorney then admitted that he had already possessed a copy of Daniel's prior testimony from the federal trial, but that he had never been given any statements from juvenile court. The state responded that there were no juvenile court statements. Because of the confusion of whether or not the witness had made statements during a juvenile court proceeding, or had just made statements during the time his case was still being handled in juvenile court, the witness was recalled to clear the matter up and testified that he meant that he had told "the federal people" what had happened, before agreeing to his offer of settlement. The following exchange then took place between the court and appellant's attorney, prior to cross-examination:

> THE COURT: .... All right, is there anything else that needs to be taken up with reference to the statement issue?
> 	Does that clarify it, Mr. Landis?
> MR. LANDIS: Yes, it does, Judge.
> THE COURT: Okay.
> MR. LANDIS: That's the first I'd heard of anything in juvenile court.

Appellant did not make a request for any statements given by this witness to "the federal people," at this time, but instead proceeded with the cross-examination of the witness.

One of the last witnesses called by the state in its proof was Wayne Jackson, an FBI agent, who testified on cross-examination that he interviewed Daniel in February 1994, and later reduced that interview to a "summarization," called an "FD-302." He was asked repeated questions by appellant about what Daniel told him in this interview, and repeatedly suggested to appellant's attorney that he be allowed to review the summarization to aid his testimony. Appellant's attorney finally agreed, and the state passed the document to the witness, who proceeded to testify from it. Although appellant's attorney thanked the state for passing the document to the

6

witness, and so obviously knew of its existence, he never asked to be allowed to see it, and never objected to its being given to agent Jackson.  At no time did the defense appear to be surprised by the existence of the "FD-302" of Thaddeus Daniel.

At the end of the state's proof, appellant moved for a mistrial on the basis that the state had failed to produce this document after Daniel's testimony, pursuant to Rule 26.2 of theTennessee Rules of Criminal Procedure, also known as the "Tennessee Jencks Act."  Section (a) of that rule provides:

> Motion for Production. - After a witness other than the defendant has testified on direct examination, the trial court, on motion of a party who did not call the witness, shall order the attorney for the state or the defendant and the defendant's attorney, as the case may be, to produce, for the examination and use of the moving party, any statement of the witness that is in their possession and that relates to the subject matter concerning which the witness has testified.

Section (e) of that same rule provides for sanctions for noncompliance, as follows:

> Sanction for Failure to Produce Statement. If the other party elects not to comply with an order to deliver a statement to the moving party, the court shall order that the testimony of the witness be stricken from the record and that the trial proceed, or, if it is the attorney for the state who elects not to comply, shall declare a mistrial if required by the interest of justice. (emphasis supplied)

Appellant, in a prior motion hearing, had already been granted production of all Jencks material by the trial court.  It is the contention of appellant that the "FD-302" written by Agent Jackson was a prior statement of the witness, and therefore its nonproduction should have resulted in a mistrial, in that Daniel was a crucial witness for the state and the statement reveals that Daniel was granted federal immunity for his federal grand jury testimony.  The trial court, after a hearing, ruled that the "FD-302" was a statement that should have been provided to the defense under Rule 26.2, but also noted that there was some confusion as to this issue since the federal authorities apparently did not consider it a statement for their trial purposes.  The court then found that there was no wrongdoing on the part of the state, or any intent to keep the statement from the defense, but that it was "more of a matter of misunderstanding and confusion," and declined to impose sanctions.  The trial judge did, however, reopen the state's proof in the interest of fairness, recalled Daniel, and allowed appellant to cross-examine him with the summarization of the agent's interview of

7

Daniel.

As seen from the trial record, although appellant knew of the existence of this document, and allowed it to be passed to a witness during testimony, he never asked the trial court to order its production for examination. This Court also respectfully disagrees with the trial court's finding that the summarization in question was a "statement" as defined by Rule 26.2. Section (g) of that rule states:

Definition. As used in this rule, a "statement" of a witness means:

(1) A written statement made by the witness that is signed or otherwise adopted or approved by the witness; or

(2) A substantially verbatim recital of an oral statement made by the witness that is recorded contemporaneously with the making of the oral statement and that is contained in a stenographic, mechanical, electrical, or other recording or a transcription thereof. (emphasis supplied)

The document at issue was a summarization written by an FBI agent after interviewing Daniel, which was later transcribed as a record of his interview with this witness. It was not a "substantially verbatim recital" of the interview, nor was it "recorded contemporaneously." Even actual notes an investigator made while interviewing a witness do not qualify under the definition of a "substantially verbatim recital" of a witness's oral statement under Rule 26.2 (g). State v. Payton, 782 S.W.2d 490, 494-95 (Tenn. Crim. App. 1989). This statement was only a summary, and was the statement of an FBI agent, not Thaddeus Daniel.

There is also no evidence in the record that Daniel ever adopted, approved, or even knew of the summary's existence. Rule 26.2 was formerly contained in Rule 16(E). Prior to its separation from our Discovery Rule and its renumbering, there was a great deal of confusion among the bench and bar as to what was discoverable pretrial, and what was "Jencks material," and therefore only discoverable after direct testimony of a witness. In State v. Robinson, 618 S.W.2d 754, 759 (Tenn. Crim. App. 1981), this Court attempted to resolve the confusion, and held that under then Rule 16(E) a summary of a witness's pre-trial statement would not be subject to inspection under the "Jencks Act" unless it were signed, adopted or approved by the witness. Although the state might in some situations be under a duty to turn a statement of this type over to the defense, due to its exculpatory nature, for instance, or for other

8

legitimate reasons, the state was under no obligation here to furnish a copy of this summary to the defense as "Jencks material" under Rule 26.2.

Even if we held the "FD-302" of Daniel's interview to be a prior statement under the rule, the action of the trial judge in recalling the witness for additional cross-examination prior to the beginning of defense proof insured that a mistrial would not be "required by the interest of justice" pursuant to Rule 26.2 (e), as there was no prejudice to appellant.

## MOTION FOR JUDGMENT OF ACQUITTAL

Appellant alleges that the trial judge should have granted his motion for judgment of acquittal as to two indictments due to insufficiency of the evidence: the Aggravated Assault upon Lorenzo Suttles, and the Aggravated Robbery of Kristi Wilson. Appellant further claims that the conviction for Criminal Attempt, to wit: Especially Aggravated Robbery should not stand in light of his conviction for Felony Murder on the same facts.

The indictment charging the Aggravated Assault alleges that appellant caused "Lorenzo Suttles to reasonably fear imminent bodily injury by use of a deadly weapon." Although Mr. Suttles did not testify, his companion Lashanna Acklin did testify that while walking with Mr. Suttles, five young men exited a car, forced her to completely disrobe at gunpoint and forced Mr. Suttles to remove his clothes, beating him unconscious. She identified a photo of the car in which appellant was arrested shortly after the assault as being the car the young men were driving. Two of those young men, Thaddeus Daniel and Jermichael Young, identified appellant as the driver during the assault, and testified that he had a gun, and was their leader. They stated that he got out with them and stood in front of the station wagon with a ski mask on, holding a .380 handgun, while the assaults took place.

The indictment charging Aggravated Robbery alleges that appellant

...did unlawfully, intentionally, knowingly, violently, by use of a deadly weapon or by the display of any article used or fashioned to lead Kristi Wilson to reasonably believe it to be a deadly weapon, and putting Kristi Wilson in fear, take from her person money....

Although Ms. Wilson didn't testify, her companion and driver, Ginger Brown, stated that a car full of young men ran them off the road, and one of them made Kristi Wilson give

9

him twenty dollars at gunpoint. They both were forced to sit on the ground while Ms. Brown's car was stolen, and Ms. Davidson's previously stolen car was abandoned at the scene. Thaddeus Daniel testified that appellant was the leader, was one of the two men who got out of the car during the robbery, and was the driver of both cars.

Both of these incidents fit in with other witness testimony involving appellant in other crimes near in time, with the same criminal actors in the same cars, with appellant being the leader and driver.

In determining the sufficiency of the evidence, this court does not reweigh or reevaluate the evidence. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Nor may this court substitute its inferences for those drawn by the trier of fact from circumstantial evidence. Liakas v. State, 199 Tenn. 298, 305, 286 S.W.2d 856, 859 (Tenn. 1956). This court is required to afford the State of Tennessee the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. State v. Herrod, 754 S.W.2d 627, 632 (Tenn. Crim. App. 1988). Questions concerning the credibility of the witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact, not this court. State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State. State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973).

Because a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, the accused has the burden in this court of illustrating why the evidence is insufficient to support the verdict returned by the trier of fact. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). This court will not disturb a verdict of guilt due to the sufficiency of the evidence unless the facts contained in the record and the inferences which may be drawn from the facts are insufficient, as a matter of law, for a rational trier of fact to find the accused guilty beyond a reasonable doubt. State v. Matthews, 805 S.W.2d 776, 780 (Tenn. Crim. App. 1990). We find the facts shown in the record sufficient to sustain these two convictions. Even though appellant was

not identified as being directly responsible for these two particular crimes, there was sufficient proof for the jury to find that he was "criminally responsible for an offense committed by the conduct of another" pursuant to T.C.A. § 39-11-402.

Appellant also alleges in his brief that the jury "acquitted the defendant of the count charging premeditated murder and convicted of felony murder. Consequently the conviction for attempted especially aggravated robbery cannot stand." We initially note that appellant has cited no legal authority in support of his argument, which results in a waiver. Rule 27(a)(7) of the Tennessee Rules of Appellate Procedure. Appellant also fails to state any legal grounds for this contention. In State v. Blackburn, 694 S.W.2d 934 (Tenn. 1985), our Supreme Court held that the imposition in a single trial of dual convictions for both felony murder and the underlying felony does not violate constitutional prohibitions against double jeopardy, as the two statutes are directed to "separate evils." Id. at 936-37. See also State v. Barber, 753 S.W.2d 659, 671; State v. Zirkle, 910 S.W.2d 874, 890 (Tenn. Crim. App. 1995). This issue is without merit.

Having found no reversible error in the court below, the judgment of the trial court is therefore AFFIRMED.

_____ CHRIS CRAFT, SPECIAL JUDGE

CONCUR:

_____
JERRY L. SMITH, JUDGE


_____
JOE RILEY, JUDGE


11